# Exhibit A

**INTERNATIONAL CENTRE FOR SETTLEMENT OF INVESTMENT DISPUTES**

**Unión Fenosa Gas S.A.**

**v.**

**Arab Republic of Egypt**

**(ICSID Case No. ARB/14/4)**
**Annulment Proceeding**

PROCEDURAL ORDER NO. 3
CONCERNING THE HEARING ON ANNULMENT

*Members of the Committee*
Mr. Andrés Jana Linetzky, President of the *ad hoc* Committee
Judge Bernardo Sepúlveda Amor, Member of the *ad hoc* Committee
Dr. Inka Hanefeld, Member of the *ad hoc* Committee

*Secretary of the ad hoc Committee*
Ms. Milanka Kostadinova

July 3, 2020

*Unión Fenosa Gas S.A. v. Arab Republic of Egypt*
*(ICSID Case No. ARB/14/4) – Annulment Proceeding*
Procedural Order No. 3

## I.    **INTRODUCTION**

1.    This Procedural Order addresses the request of the Arab Republic of Egypt ("Egypt" or the "Applicant") in its letter June 9, 2020 for the postponement of the hearing on annulment (the "Hearing"), the comment provided by Unión Fenosa Gas S.A. ("UFG") on June 15, 2020, and the positions of the Parties expressed at the Case Management Meeting held on June 24, 2020 concerning the date, the format, and the expert participation in the Hearing.

2.    It is recalled that on July 26, 2019, the Committee issued Procedural Order No. 1 ("PO1") and its annexes recording the agreement of the Parties and the decisions of the Committee on procedural matters.  PO1 provides, *inter alia*, that the issue of the examination of witnesses and experts should be decided by the Parties once all submissions had been filed. Pursuant to Annex A to PO1, a pre-hearing organizational meeting was scheduled to be held on June 8, 2020 and the Hearing in this proceeding held on July 14-15, 2020.

3.    On June 5, 2020, the Committee polled the Parties' availability for a pre-hearing organizational meeting on June 16, 2020.  The Committee expressly referred in that communication to its letter of March 30, 2020 in which, in light of the global COVID-19 pandemic, the Committee stated as follows:

> *"Taking into account the evolution of the current situation and restrictions for travel, the Committee and the Parties may consider at the proper time arrangements for holding the hearing remotely through videoconference, if the circumstances so require."*

4.    By letter of June 9, 2020, summarized below, the Applicant requested that the pre-hearing organizational meeting and the Hearing scheduled for July 14-15, 2020 be postponed until a mutually agreed-upon date after September 15, 2020.

5.    By email of the same date, UFG indicated that they remain available for the pre-hearing conference call on June 16, 2020, objected to any postponement of the Hearing, and requested an opportunity to respond to the Applicant's letter.

6.    On June 10, 2020, the Committee granted UFG's request for leave to file comments on the Applicant's letter of June 9, 2020 by June 15, 2020. The Committee further informed the Parties that the pre-hearing organizational meeting was postponed.

7.    By letter of June 15, 2020, summarized below, UFG provided its comments on the Applicant's letter of June 9, 2020. In particular, UFG objected to the Applicant's request and requested that the Committee maintain the current schedule with the pre-hearing conference to be rescheduled that same week.

8.    On June 17, 2020, the Committee informed the Parties that it wished to hold a case management meeting with the Parties on June 24, 2020 by videoconference to discuss the dates and format of the Hearing and the participation of expert witnesses.

*Unión Fenosa Gas S.A. v. Arab Republic of Egypt*
*(ICSID Case No. ARB/14/4) – Annulment Proceeding*
Procedural Order No. 3

9.     On June 19, 2020, both Parties confirmed their availability for the proposed case management meeting.

10.    On June 24, 2020, the *ad hoc* Committee held a case management meeting with the Parties by videoconference. The following persons were present:

*Committee*:
  Mr. Andrés Jana Linetzky            President
  Judge Bernardo Sepúlveda Amor       Member
  Dr. Inka Hanefeld                   Member

*ICSID Secretariat*:
  Ms. Milanka Kostadinova             Secretary of the Tribunal

*For the Arab Republic of Egypt*:
  Counsellor Ahmed Sayed              ESLA
  Counsellor Nada Elzahar             ESLA
  Counsellor Radwa Helmy              ESLA
  Counsellor Ebtehal Ahmed            ESLA
  Dr. Claudia Annacker                Cleary Gottlieb Steen & Hamilton LLP
  Ms. Laurie Achtouk-Spivak           Cleary Gottlieb Steen & Hamilton LLP
  Mr. Larry C. Work-Dembowski         Cleary Gottlieb Steen & Hamilton LLP
  Ms. Zeïneb Bouraoui                 Cleary Gottlieb Steen & Hamilton LLP

*For the Unión Fenosa Gas*:
  Mr. R. Doak Bishop                  King & Spalding LLP
  Mr. James E. Castello               King & Spalding International LLP
  Ms. Isabel Fernández de la Cuesta   King & Spalding LLP
  Mr. Aloysius Llamzon                King & Spalding LLP
  Ms. Erin Collins                    King & Spalding LLP
  Elena Feliu Vera                    UFG
  Javier Gerboles de Galdiz           UFG
  Ignacio de la Pena Zarzuelo         UFG
  Jose Luis de Lara Alonso-Buron      UFG

## II.    **POSITIONS OF THE PARTIES**

### A.    **DATE AND FORMAT OF THE HEARING**

*Unión Fenosa Gas S.A. v. Arab Republic of Egypt*
*(ICSID Case No. ARB/14/4) – Annulment Proceeding*
Procedural Order No. 3

**(1)     The Arab Republic of Egypt' Position**

11.     The Applicant agrees with the Committee that given that an in-person Hearing in July is unlikely to take place, conducting a remote Hearing should be considered in the alternative. In its letter of June 9, 2020, the Applicant requests the postponement of the Hearing so that the Parties be "better positioned to participate in an in-person hearing or prepare alternative arrangements."

12.     At the same time, the Applicant submits that it would not be in a position to effectively and fully participate in the Hearing on the reserved dates neither in-person nor via videoconference. The Applicant submits that the postponement of the Hearing is necessary for four reasons.

13.     First, the Applicant asserts that it is physically unsafe and logistically impossible for its co-counsel, the Egyptian State Lawsuits Authority ("ESLA") to adequately prepare and participate in a Hearing due to the ongoing public health crisis. As a result of the emergency measures taken in Egypt to combat the COVID-19 crisis, including a nation-wide curfew and lock-down restrictions, the ESLA co-counsel team works remotely with poor technical and internet access and faces significant logistical difficulties and legal restrictions. ESLA team's access to its offices is limited but counsel need to be at the offices for the Hearing. The Applicant's capacity to effectively defend itself in the proceeding will remain impaired for the coming months.

14.     Second, in the Applicant's view the effective participation in the Hearing, consistent with each Party's due process rights, requires access to technical equipment and internet bandwidth.  The Applicant is concerned that these requirements would not be readily available to other participants in the Hearing, in addition to ESLA.

15.     Third, the Applicant submits that a key member of its legal team is no longer available to participate in the July Hearing as a result of COVID-19-related rescheduling conflict.

16.     Fourth, the Applicant asserts that a two-month delay of the Hearing is entirely reasonable in the current circumstances and would not prejudice either Parties' interests.

17.     According to the Applicant, the potential examination of the Parties' Egyptian law experts within 2 days poses further difficulties requiring postponement. The Applicant observes that the time required for a virtual expert examination, dealing with possible technical problems, and shortened hearing days due to the seven time-zone difference, would warrant the reservation of a third hearing day.

18.     At the case management meeting, counsel emphasized as a preliminary matter that Egypt strongly disagreed with UFG's assertions that Egypt's request for postponement of the Hearing was part of dilatory tactics intended to frustrate UFG's enforcement efforts as long as possible. Counsel stated that Egypt was not making excuses. ESLA already lost one person to the COVID-19 virus. The ESLA team works remotely under a number of health

4

Case 1:18-cv-02395-JEB   Document 28-1   Filed 07/07/20   Page 6 of 11

*Unión Fenosa Gas S.A. v. Arab Republic of Egypt*
*(ICSID Case No. ARB/14/4) – Annulment Proceeding*
Procedural Order No. 3

and other restrictions, including a prohibition on the use of private telephones and private internet connections for hearings. The ESLA team is obliged to comply with such restrictions for their own safety and to comply with the law.

19. Counsel for the Applicant outlined the difficulties that would arise for Egypt if the Hearing were to take place on the reserved dates. Further, the Applicant submitted that the Committee should not condone the imbalances due to the Parties' different access to technology and ability to be fully connected during the Hearing. It was also stressed that the ESLA team was an integral part of Egypt's defense, was intimately involved in all factual and legal aspects of this proceeding and its full participation in the Hearing was therefore essential.

20. Counsel for the Applicant concluded that Egypt's request for the postponement of the Hearing after mid-September was not a dilatory tactic, but a well-founded request based on the current circumstances caused by the COVID-19 pandemic.

### (2)    UFG's Position

21. UFG also agrees with the Committee that an in-person hearing is unlikely to be possible on the presently scheduled dates of July 14-15, 2020.

22. In its letter of June 15, 2020, UFG indicates that it remains available for both the pre-hearing organizational meeting and the Hearing on the reserved dates, and strongly objects to any postponement of these dates.

23. Noting that the Applicant seeks to defer the Hearing until after September 15, 2020, UFG responds as follows. First, UFG submits that a delay would be unnecessary and prejudicial. UFG recalls that its enforcement efforts are currently stayed pending the Committees' final ruling in this proceeding and in expectation that the Hearing will take place as scheduled. Second, UFG views the Applicant's request to postpone the Hearing as a dilatory tactic. It emphasizes that the more its recognition proceeding will be stayed by the U.S. District Court judge the more precarious UFG's financial position will become. Third, for UFG, conducting the Hearing remotely will be consistent with the Parties' due process rights.

24. UFG also submits that the Applicant's four grounds for seeking a postponement of the Hearing are without merit.

25. First, with respect to the alleged technology and logistical difficulties, including internet access of the ESLA team, UFG states that it is unclear what is meant by the Applicant's allegation that ESLA's representatives lack access to required facilities. UFG observes that virtual hearings are not unfamiliar in international arbitration. UFG points out that the Egyptian Government officials had recently advertised their ability to participate in virtual meetings and web conferences. Further, Egypt's representatives should also be able to join by phone and no argument that such an impediment exists has been made. Moreover, Egypt

Case 1:18-cv-02395-JEB   Document 28-1   Filed 07/07/20   Page 7 of 11

*Unión Fenosa Gas S.A. v. Arab Republic of Egypt*
*(ICSID Case No. ARB/14/4) – Annulment Proceeding*
Procedural Order No. 3

is represented by one of the world's largest law firms, which is fully capable to participate in virtual hearings.

26.     Second, with respect to access of "other participants" to necessary technical equipment, UFG notes that the Applicant does not explain who these people are.  UFG argues the Committee not give weight to Egypt's vague references to "other participants."

27.     Third, UFG argues that the scheduling conflict of one of the Cleary's team of lawyers arose after the Committee affirmed the July 14 -15, 2020 hearing dates.

28.     Fourth, UFG states that Egypt's repeated efforts to postpone the enforcement of the Award is causing it severe financial harm. UFG maintains that the longer the annulment proceeding is delayed, the longer UFG is prevented from enforcement of the Award in U.S. courts, and the closer to insolvency it is being pushed.

29.     UFG also rejects the Applicant's more general concerns about the sufficiency of the current Hearing schedule.  In UFG's view, even if the curfew in Egypt were extended into July, the Hearing could still take place on the scheduled dates. UFG suggests that with proper organization of the Hearing, each party would be allowed adequate time to present its oral arguments on annulment and the Committee to ask any questions.

30.     At the case management meeting, counsel for UFG first noted that the Applicant did not raise the issue of postponement of the Hearing earlier, in March 2020, when the COVID-19 measures taken by Egypt were already in place. The holding of virtual hearings is now a common place in the practice of international arbitration and all arbitral institutions are trying to avoid delaying hearings in the current circumstances.

31.     With respect to the issues raised by the Applicant at the meeting, counsel for UFG responded that its understanding was that removing the curfew restrictions in Egypt was impending. In addition, the airports in Egypt will be open as of July 1, 2020 and the courts in Egypt will be open and the government lawyers involved in legal proceedings will be expected to attend.  UFG also remarked that all major Ministries in Egypt have technology centers and assumed that the Ministry of Justice also had one accessible to ESLA.  Counsel for UFG was unsure what the confidentiality restrictions for using private laptops for a hearing meant on the backdrop of the virtual arbitration hearings currently taking place in Egypt under the auspices of CRCICA.

32.     Finally, counsel reiterated that it was crucial for UFG to bring this proceeding to prompt resolutions given the dire economic consequences caused by Egypt by not delivering gas to UFG for eight years. UFG was relying on the Hearing in July. It was clear that the technology was available for such a Hearing.  For UFG, the Hearing could and should go forward in July as scheduled.

As to the number of days necessary for the Hearing, UFG was of the view that ample time would be available for holding the Hearing in two days.  However, UFG was amenable to

add an extra day if the Committee considered this was needed. UFG was reluctant to move the dates of the Hearing given that the current uncertainties are likely to persist and finding alternative days for the Hearing may be difficult to find.

**B.   EXAMINATION OF EXPERT WITNESSES AT THE HEARING**

**(1)   The Arab Republic of Egypt's Position**

33.   The Applicant considers it essential that the Parties be provided the opportunity to examine the Egyptian law experts during the Hearing.

34.   The Applicant stated that it sought, and the Committee granted Egypt's request to submit expert testimony on the question of the legality of lobbying activities under Egyptian law. That question was directly relevant to Egypt's three grounds for annulment raised in its application for annulment and, in particular, to (i) whether Egypt's right to be heard was violated by the majority; (ii) whether the majority failed to state reasons; and (iii) whether the majority exceeded the Tribunal's power in upholding its jurisdiction based on the 'lobbyist' theory.

35.   The Applicant further submits that given the expert reports' disagreements, the Parties should have the opportunity to test the expert evidence by cross-examining the other Party's expert at the Hearing. The Applicant refers to several other ICSID annulment proceedings and argues that when other committees have allowed expert reports to accompany written submissions, the committees have also allowed the cross-examination of the expert at the hearing.  In the Applicant's view, there is no reason to deviate from this practice in the present proceeding.

36.   The Applicant maintains that "exceptional" circumstances are present in terms of the PO1 since it was given the opportunity to present an expert report and because of the differences in the reports of the two experts.

37.   In the view of the Applicant, the Committee and both Parties would benefit from the cross-examination of the legal experts and this would be consistent with ICSID *ad hoc* committee practice that once the expert evidence has been admitted in the record the Parties be allowed to test this evidence during cross examination.

**(2)   UFG's Position**

38.   Contrary to the Applicant's position, UFG submits that the examination of expert witnesses at the Hearing is not necessary.

*Unión Fenosa Gas S.A. v. Arab Republic of Egypt*
*(ICSID Case No. ARB/14/4) – Annulment Proceeding*
Procedural Order No. 3

39.   It urges the Committee to treat the experts' reports on Egyptian law submitted in this
annulment proceeding as legal submissions by the Parties, to be argued by each Party
before the Committee in its oral presentations at the Hearing.

40.   UFG avers that this approach does not derogate from the Parties' due process rights and
has been adopted in arbitration proceedings. UFG refers to a number of commentators who
have expressed views that dispensing with cross-examination of legal experts is acceptable
in arbitration practice, that such cross-examination is not regarded as particularly useful
with respect to resolving content of the applicable law, and that given its limited use to
tribunals and parties, it is less frequently used in modern practice.

41.   UFG further states that all Committee members are lawyers who could assess legal
argument and determine the law when necessary.  According to UFG, nuances of the law
could get lost during cross-examination.  Moreover, UFG is of the view that "there are no
legal points that cannot be made in legal argument, especially given the expert reports."

42.   UFG also states that this Committee has full discretion to decide on the examination of the
witnesses, especially in the absence of an ICSID rule that requires cross-examination of
legal experts.  Relying on a ruling of the *ad hoc* Committee in the *Pey Casado v. Chile*
case, UFG submits that this *ad hoc* Committee may exceptionally include the examination
of witnesses and experts at the Hearing, but UFG sees no need for such "exceptional"
inclusion of the legal experts examination in this particular proceeding.

43.   At the case management meeting, counsel confirmed that UFG maintained its views.
Counsel for UFG observed that when granting Egypt's request to file an export report, the
Committee made it clear that it was making a decision on the admissibility of the evidence.
For UFG, it is now open for the Committee to decide whether cross examination of the
legal experts should be allowed at the Hearing.  However, UFG maintains that there are no
"exceptional" circumstances, that the Committee is under no obligation to provide for
cross-examination of the legal experts, and that the subject of the legal expert reports is not
directly related to the issues before the Committee.


## III.   <u>CONSIDERATIONS AND DECISION OF THE COMMITTEE</u>


### A.   DATE AND FORMAT OF THE HEARING

44.   As stated during the case management meeting, the Committee fully appreciates the
difficulties the COVID-19 pandemic has created globally. The Committee has therefore
been flexible with respect to the requests it has received to extend certain deadlines, which
has resulted in adjustments of the procedural calendar for the Parties' second round of
written pleadings on annulment.  At the same time, the Committee is mindful of its duty to
act fairly and efficiently in bringing this annulment proceeding to a conclusion in a
reasonable timeframe.  The Committee has also conveyed to the Parties its view that under

Case 1:18-cv-02395-JEB   Document 28-1   Filed 07/07/20   Page 10 of 11

*Unión Fenosa Gas S.A. v. Arab Republic of Egypt*
*(ICSID Case No. ARB/14/4) – Annulment Proceeding*
Procedural Order No. 3

the situation the world is currently experiencing, the possibility of holding the Hearing in-person during the next months is highly unlikely and therefore not realistic.

45.     Taking that into consideration, and after hearing the Parties' positions, the Committee proposed and the Parties accepted to hold the Hearing on August 18, 19 and 20, 2020, remotely via videoconference.

46.     During the case management meeting, the Committee also proposed, and the Parties agreed, to hold a Pre-Hearing Organizational Meeting on July 13, 2020 commencing at 10:00 AM Eastern Time by videoconference.

47.     The Committee kindly asks the Parties to confer amongst themselves about the procedural, administrative and logistical matters for the Hearing, including the means by which they will provide document bundles and demonstrative exhibits, and convey to the Committee their agreements and points of difference no later than July 8, 2020.

## B.     EXAMINATION OF EGYPTIAN LAW EXPERTS AT THE HEARING

48.     Having considered the arguments of the Parties, and Sections 16.1 and 18.1 of PO1, the Committee has decided to accept that the legal experts presented by the Parties may be examined by the Parties during the Hearing.

49.     The Committee notes that according to the opinion of UFG's counsel the examination of legal experts at the Hearing is not necessary. Further, the Committee agrees with UFG's counsel that, in principle, the cross examination of legal experts can be dispensed with without affecting the due process rights of the Parties and it also agrees that examination of legal experts does not always prove to be helpful for arbitral tribunals. In addition, the Committee is mindful that Procedural Order No.1 states in its Section 18.1 that the oral procedure at the Hearing may *exceptionally* include the examination of experts.

50.     Notwithstanding, the Committee also acknowledges that pursuant Section 15.5 of PO1 each Party has submitted legal expert reports and that Egypt's counsel has manifested that it considers it essential to be provided with the opportunity to test the expert evidence submitted by UFG by cross-examining the Egyptian law expert presented by UFG.

51.     In light of the above, taking on balance the position of the Parties and having considered their arguments, the Committee has decided to accept that the Parties can have a possibility to examine the legal experts during the Hearing. Furthermore, the Committee has considered that an examination of the legal experts according to the rules that the Committee will mention below, can be reasonably accommodated within the agreed timeframe of the Hearing without affecting its normal course.

52.     The examination will consist of a direct presentation by the legal expert of maximum 15 minutes, followed by a cross-examination of maximum 45 minutes.

*Unión Fenosa Gas S.A. v. Arab Republic of Egypt*
*(ICSID Case No. ARB/14/4) – Annulment Proceeding*
Procedural Order No. 3

53.   The Committee reiterates its gratitude to the Parties for their cooperation during the case management meeting and agreements with the Committee's proposal.

For and on behalf of the *ad hoc* Committee:

_____

Mr. Andrés Jana Linetzky
President of the *ad hoc* Committee
Date: July 3, 2020